Franklin County, Court of Common Pleas.

## MARY A. SPENCER, v. ISAAC F. KING.

1. Fraud in the sale of property defined.
2. The decision of the Supreme Court of Illinois, determining the validity of a title to land situated in that state, is binding upon the court and jury in this case.
3. The opinion as to the value of land expressed by the seller to induce the purchaser to buy is not a fraud, if it was only an opinion, and was honestly given, although untrue.
4. The law does not exact any greater degree of honesty and good faith from a minister of the gospel who sells property than it does from a layman.

---

CHARGE TO THE JURY.

Gentlemen of the jury: The plaintiff complains that she has sustained damages by reason of deceit and fraud practiced upon her by defendant. Deceit, or fraud, in business transactions consists in fraudulent representations or contrivances by which one person deceived another who has a right to rely upon such representations, or has no means of detecting such fraud.

It is the law that fraud vitiates every contract. There is no exception to this rule. When fraud is proven to have promoted the making of a contract, it is void, and cannot be enforced.

Fraud taints every transaction which is the result of it.

But fraudulent representations in the sale of property will not, in themselves, always constitute deceit which will be the subject of an action for damages.

In cases like this, where the parties deal with each other on a footing of equality, there must be some existing circumstances, or some means used, calculated to prevent the detection of falsehood or fraud. and impose upon a purchaser of ordinary itelligence, prudence and circumspection. If a purchaser has full opportunity of examining the property, and can easily and readily ascertain its quality and value by inspection, and he neglects to do so, then any injury which he may sustain by such negligence is the result of his own folly, and he can have no relief at law; unless the representation was of such a character as to mislead a prudent person or put him off his guard.

The law wisely and justly presumes, in such a case, that a purchaser will take care of his own interests, and that, when he distrusts himself, his own judgment and shrewdness, he will protect himself from imposition.

When the purchaser has a full opportunity of inspecting the property and fails to do so, and the representation was not such as should have misled him, he has no right to complain, if the property sold does not measure up to the representation of the seller.

It is well known that, in the course of trade, sellers will speak in terms of high commendation of the property which they offer for sale.

Such "dealing talk" is not deemed, in law, as fraudulent, unless accompanied with some artifice calculated to deceive the purchaser and throw him off his guard, or some concealment of intrinsic defects not easily discoverable by reasonable diligence and care.

The plaintiff and her brother exchanged some real estate situated in this city with the defendant for notes owned by him. Part of the real estate consisted of a house and lot, which was wholly owned by the plaintiff, or almost so. I believe the testimony shows that the brother had a small interest in it. The value of the house and lot was somewhere between five thousand and six thousand dollars. The notes aggregated $7,500.00. A note for $1,000.00 was also given to the defendant, first by the brother; but afterwards it was signed by the plaintiff.

This transaction was, in law, a sale of the notes by the defendant to the plaintiff.

These notes were secured by a mortgage on three thousand acres of land situated in the state of Illinois.

They have been described by the testimony.

The immediate ground work of the plaintiff's action is the claim and charge that the defendant falsely and fraudulently represented to her and to her agent, her brother, that the notes were well secured on lands which was worth $15.00 per acre.

It is further charged that the land was not worth that amount; that it was not worth enough to make sufficient security for the notes, and that the title to the land was so involved in dispute as to make the land practically worthless.

It is not controverted that most of the negotiation which led to these sales and exchange of property were chiefly conducted, on the part of the plaintiff, by her brother as her agent. She only claims that she had one conversation with the defendant.

In law all that her agent, Leroy Spencer, did and said in the course of his agency, while he was acting as her agent, and within the scope of this agency, is just as binding upon her as if she had been the authoress of those acts and declarations.

Any notice and knowledge which he possessed, was her notice and knowledge; any imprudence or mistake or neglect which he committed, was, in the eye of the law, her imprudence, mistake and negligence.

You have observed from my statement that the defendant is charged with having made two false representations. First, that the notes were well secured by a mortgage n land; second, that the land was worth $15.00 per acre.

Putting aside for the present, any rule of law that is specially applicable to those complaints, or either of them, you are instructed, that to entitle the plaintiff to recover, she must, by a preponderance of the evidence, have proved: 1. That the representations, or one of them, were made. 2. That both or one of them, were false. 3. That the defendant knew, at the time they were made, that they were false. 4. That she and her agent were then ignorant of their falsity. 5. That she relied upon those representations, or one of them, in making the purchase of the notes and in selling her property. 6. That she was justified in relying upon them, and—7. That she was pecuniarly injured by her conduct which was induced by those representations, or one of them.

If all of these propositions of fact have not been proved by a preponderance of the evidence, the defendant is entitled to your verdict.

If the defendant made the representation that the notes were well secured on land, that meant that the land would sell for enough to pay the notes, if the mortgage should have to be foreclosed.

That was what the plaintiff was entitled to, if such a representation was made by the defendant.

It is claimed that the notes were not well secured, because the title to the land was not good.

It was conveyed by a mortgage and trust deed to one Seymour, which were executed to secure certain bonds, called railroad bonds.

The mortgage was foreclosed by a decree of the Circuit Court of the United States for the southern district of Illinois; the land was sold, under that decree, and purchased by the bondholders.

The evidence does not disclose that the apparent title of those purchasers has ever been annulled by any court.

After that suit for foreclosure was brought, Wayne county sold the land to the Illinois South Eastern R. R. Co.

It was this title which was held by G. D. Martin when he executed the mortgage that secured these notes to the plaintiff.

But the Supreme Court of Illinois has decided that the decree of foreclosure of the United States court was a nullity as to those who purchased the land of Wayne county and who were not parties to the foreclosure suit, although they purchased after the suit was brought, and even after the foreclosure.

That court also decided that Wayne county was not legally authorized to mortgage the land to Seymour, because the condition upon which the county might aid in the construction of the railroad for whose benefit the mortgage and trust deed were executed did not then exist; and therefore they were void.

This decision was introduced in evidence. It discloses what the law of Illinois was, and is, and it demonstrates as matter of law, that there is no merit in the title which is claimed to be adverse to the title which was conveyed to the defendant by the mortgage to secure the notes sold to the plaintiff. By this decision both the court and the jury in this case must be controlled.

Still the question is, were the notes well secured by the mortgage on the land?

It is claimed that, in spite of the fact that the law of Illinois makes the King title paramount to the other opposing title, there was and is a cloud on it which destroys the sufficiency of the mortgage as a security for the notes.

If the adverse claim based upon the foreclosure which was caused by the United States Court decree, injuriously affected the title covered by the mortgage to the defendant; if it could be vexatiously used against that title, it constituted a cloud upon that title. A title of which a purchaser cannot acquire possession, except by litigation and judicial decision, or one which he must defend, or which would expose him to litigation, is a doubtful, and unmarketable title.

If the evidence shows that the title which was conveyed by the mortgage in question was such a title as I have described, then it is competent for you to consider it, in determining whether the mortgage security for the notes in question was destroyed or impaired; if it does not show that fact, there is no merit in the claim touching the disputed title.

Le Roy Spencer, in his deposition, testified that the defendant told him "at the time of the trading that there was a pretended claim to the land by other parties, but that they could not sustain the claim, for the reason that they had held the land in the family for over 30 years, had paid the taxes, and no other claim had been set up against it coming to him;" and that he also told him "how the other claim had come; that the Government had given the land to the state, and the state had given it to the county, and the counties had given the land to some railroad companies on a contract, but the contract had never been fullfilled, and the title failed on that account. Then the county contracted with another railroad company, and Mr. King got his title, or his father-in-law got his title from the last company."

This evidence must have the same influence upon your minds in determining this question, as if the evidence proved that the communication had been made by the defendant to the plaintiff, and was admitted by her; because he was her agent.

I submit the question to you, whether this admission of Spencer's does not show that he had the means of knowing all of the truth about the title to the lands. The law requires persons "in their dealings with each other, to exercise proper vigilance, and apply their attention to those particulars which may be supposed to be within reach of their

observation and judgment, and not to close their eyes to means of information which are accessible to them."

If Spencer had full knowledge of the condition of the title to the land, before the exchange was made, or if it was within his reach owing to the information given to him by the defendant, that was the same as if the plaintiff possessed it. and if you so conclude, you will not be authorized to return a verdict for the plaintiff, so far as her cause is founded upon the first alleged misrepresentation, namely, that the notes were well secured by a mortgage on the land.

Now as to the other alleged misrepesentation, that the land was worth $15.00 per acre.

The plaintiff, as well as Le Roy Spencer, testified in regard to this matter.

The opinion which a seller of property expresses concerning its amount, value and quality is frequently asked for, and given at sales, and is never a ground for for a law suit, when it proves to be untrue, if it was only an opinion, and was honestly given.

But if the statement of the value was more than an opinion; if it was an affirmation of a specific material fact; if it was deliberately made by the seller. who had superior knowledge in regard to it, and if it was acted upon by the buyer; and if it was known to the seller to be false, it may be deemed fraudulent and a sufficient basis for an action.

This is the rule which applies to this branch of the case here.

The defendant was about to sell, not land, but a mortgage on it, or rather notes secured by it; the land being situated in another state, not accessible to the observation and judgment of either plaintiff or agent. If the defendant had knowledge of its value superior to their knowledge, or superior knowledge without regard to theirs; if he deliberately represented to both, or one of them, that it was worth $15.00 per acre, 'and that was something more than the general praise or puffing, which sellers are liable to indulge in; if he knew it was false; and, if the plaintiff , or her agent, acted in reliance upon it, in making the purchase of the notes and in selling her property, it is competent for you to infer that it was a fraudulent representation, unless you further conclude that it was not material. What I mean by this is, that if the evidence discloses that the land, although not worth $15.00 per acre, was worth enough to pay the notes, then, the plaintiff cannot complain. She is not entitled to recover damages on this ground.

But, if you find that the representations as to the value of the land, or as to the notes being well secured, were only opinions, only trade talk, then the plaintiff cannot recover any damages, notwithstanding the opinions were untrue.

The law does not assist the purchaser who pins his or her faith to the exaggerations of the value of property made by the sellers of it.

And you should reach the same conclusion, if you are convinced by the evidence that the defendant believed the representations to be true and he had good reasons for so believing although in fact they were not true.

This is not a case where a fiduciary relation existed, and where confidence, expressed or implied, growing out of or connected with the transaction in question, was reposed by the plaintiff in the defendant. The evidence does not prove such a case. The only relation between them was that of vendor and vendee, the parties dealing with each other at arm's length.

In determining the questions submitted to you, you will consider not only what was. said and done by the plaintiff, her agent, the defendant and his agents Rickard and Gaskill, but also the fact that the notes were endorsed without recourse by him, and the fact that some of the deeds in the chain of both titles, were quit claims, and not general warranty deeds, as far as they bear upon these questions, and all the other facts and circumstances proved, bearing upon the questions.

The endorsements of the notes without recourse released the defendant from all personal liability upon the notes, but that was all.

If the notes are invalid from want of consideration as a result of the fraud charged in this case; and if this fraud has been proved, his qualfied endorsement of the notes does not shield him from a recovery for damages on this ground.

The evidence of the defendant tends to show that Le Roy Spencer, as the agent of the plaintiff, after the sale of the notes, visited the land, and made some inspection of it, and on his return expressed his own and his sister's satisfaction with the land.

There is evidence on the plaintiff's side however, which tends to controvert that evidence. That evidence (the evidence for defendant) was only admitted as tending to prove an admission by the plaintiff's agent, that she was not defrauded as she claimed, in this action, and for no other purpose.

It cannot be considered as foreclosing her right to maintain this action; for the evidence does not prove that the defendant relied upon the alleged admission of Spencer as the inspiration for any action of his own.

I admonish you that there is no issue here about the want of business capacity or mental weakness of either the plaintiff or her agent.

There was some evidence cropped out on these subjects, but not being made part of the cause of action, they cannot be ground for recovery.

Should you reach the conclusion that the plaintiff is entitled to recover, the measure of her damages would be the face value of the notes, and interrest to date added, less the value of the 1500 acres of land which was conveyed to her by Martin, and less the thousand dollar note and the interest unpaid.

In estimating the value of that land, you have a right to consider the fact, if it has been proved, that the defendant has an attachment lien on it to secure the payment of the one thousand dollar unpaid note.

In considering and deciding this case, you must not permit the mere facts that the plaintiff is a woman, and the defendant is a minister of the Gospel to influence your judgment.

These are circumstances that may have some bearing, but they are not substitutes for evidence that may be wanting to prove material facts, if you find that is the posture of the evidence.

The law does not exact any more from a minister of the Gospel than it does from a layman, when he makes a sale. You may have a conviction that a minister, in such a transaction, should act upon higher principles than a layman, but the law does not demand it, and therefore you have no right to do it.

This may be a melancholy fact, but it is not within the province of the court or jury to alter the law.

The performance of the moral duties of charity, gratitude, generosity, magnanimity, courtesy, mercy and kindness is not enforced against either a minister or a layman. Natural justice enjoins their performance, but the law refuses to do it, for obvious reasons.

It is your duty to do what is legally just by both plaintiff and defendant.

The law and evidence must guide you in doing that, nothing else. Here you must know neither friends nor enemies. Here you must be actuated by reason only, in its most cool, calculating, deliberate and unsympathetic spirit.

Invoke in you the spirit so beautifully, though figuratively, exemplified in the Goddess of Justice, who, blind-folded, weighs in the scale of justice every human action, and fearlessly determines the right without passion or prejudice, and uninfluenced by the wealth, position, or the rank of the parties.